**Law Office of Caroline M. Elliot**
Caroline M. Elliot, SBN 11541
P.O. Box 3254
Honolulu, HI 96801
Telephone: (808) 570-6003
cme@carolineelliot.com

Attorney for Mason Jordan

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI`I

| | |
|---|---|
| UNITED STATES OF AMERICA, | CR. NO. CR 22-00046 LEK |
| Plaintiff, | |
| vs. | SENTENCING MEMORANDUM; MOTION FOR DOWNWARD DEPARTURE; REQUEST FOR VARIANCE; EXHIBITS "1" – "6" |
| MASON JORDAN, | |
| Defendant. | |

NOW COMES defendant, Mason Jordan, pursuant to CrimLR32.2(e), and

submits this combined Sentencing Memorandum, Motion for a Downward

Departure, Request for Variance and Exhibits 1 through 6.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.  Introduction

The challenge of any sentencing memorandum is attempting to show the

Court the other side, the human side, of a defendant.  This is not an easy task in the

best of situations.  But when all the Court knows about someone is that they have

pled guilty to truly horrific crimes, it becomes that much harder.  This Sentencing

Memorandum is respectfully submitted in hopes of showing a more complete

picture of Mr. Jordan.

## II. Advisory Federal Sentencing Guidelines Calculation

Mr. Jordan is subject to a statutory minimum term of 15 years pursuant to 18

U.S.C. § 2251(e).  Probation calculated an advisory guideline sentence of between

360 and life based on a total offense level of 42 and a Criminal History Category I.

ECF 78, Presentence Report ("PSR"), p. 44.  Probation recommended a sentence

of 360 months, a sentence far greater than necessary to accomplish the goals of

sentencing for someone who has already turned his life around, as discussed

below.

The Court may depart downward from the advisory sentencing guideline

range for a variety of reasons.  U.S.S.G. § 5K2.0(a).  In determining whether a

variance from the guidelines is warranted, the district court may consider, without

limitation, any information concerning the background, character, and conduct of

the defendant, unless otherwise prohibited by the guidelines or other law.  18

U.S.C. § 3553(b).  In considering the nature and circumstances of the offense, and

the history and character of the defendant, the Court may look at various factors

surrounding the transgression.  *See generally*, *Kimbrough v. United States*, 552

U.S. 85, 128 S. Ct. 558 (2007).

### III.    18 U.S.C. § 3553 Factors

This Court is required to craft a sentence "sufficient, but not greater than necessary, to comply with the purposes set forth in [18 U.S.C. § 3553(a)(2)]." 18 U.S.C. § 3553(a).  The sentence must be crafted using a combination of Sentencing Guidelines ("Guidelines") recommendations and non-guidelines factors.  "It is both important and legally necessary under 18 U.S.C. § 3553(a) and under *Booker* that the district court conduct parallel analyses – first employing the Guidelines, and then considering non-guideline sentencing factors under § 3553(a)." *United States v. Mix*, 457 F.3d 906, 913 (9th Cir. 2006).

The Court may employ expansive discretion in choosing a sentence.  In addition to the properly calculated guideline range, there are several broad, enumerated factors for the Court to consider while determining appropriate punishment which is not greater than necessary. *See* 18 U.S.C. § 3553(a). "The United States Supreme Court has long recognized that sentencing judges 'exercise a wide discretion' in the types of evidence they may consider when imposing a sentence and that '[h]ighly relevant—if not essential—to [the] selection of an appropriate sentence is the possession of the fullest information possible concerning the defendant's life and characteristics.'" *Pepper v. United States*, 131 S.Ct. 1229, 1235 (2011).  Congress further expanded this principle, writing, "[n]o limitation shall be placed on the information concerning the background, character,

3

and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence." 18 U.S.C. § 3661.

## A. Nature and Circumstances of the Offense

The nature and circumstances of the offense are awful.  While Mr. Jordan would contest some of the accusations from the relevant conduct section of the PSR, he knows the seriousness of his offenses and has never tried to excuse or minimize what he did.  From the outset, he accepted responsibility for his actions and never wanted a trial; he wanted to spare the victims from the pain of reliving the events on the witness stand.  He expressed deep remorse and shame, and he understands the profound harm his conduct caused. While he knows that no words can undo the damage, his willingness to accept responsibility reflects his capacity for growth and change. Mr. Jordan has shown that he is not beyond redemption— he has confronted the reality of his actions and expressed a genuine desire to do the work necessary to ensure that he never causes such harm again. His recognition of the seriousness of his conduct, coupled with his demonstrated ability in the past to overcome adversity and rebuild his life, shows that he has the potential for meaningful rehabilitation.

Even before he was arrested, he knew this was not the person he wanted to be.  Mr. Jordan turned his life around, accomplishing this feat primarily by again

addressing his addiction to drugs and alcohol. He moved to the mainland, away from the stressors and influences that made him turn to substance abuse in the first place. As he explains in his letter to the Court (Exhibit 1), he moved to Texas, started a new career, and focused on his sobriety and well-being. He excelled at his new job, and climbed the ladder quickly.

Proof of his turn-around can be seen in his establishing a new relationship with a woman he met while at work in Texas and moving to New Mexico to be with her and her two daughters. While he was arrested shortly after his move, he spent a great deal of time with his fiancé and her family before, while they were still in a long-distance relationship. He was around her daughters, sober, with no issues of any kind. This shows that the biggest issue was Mr. Jordan's use of drugs and alcohol. It also shows that he has a low chance of recidivism once he is released.

**B. History and Character of Mr. Jordan**

> "Each of us is more than the worst thing we have ever done."
>     -   Bryan Stevenson

Even if he had committed every one of the acts of which he was accused and charged, there is still much more to Mason Jordan. He is a loving son, brother, and uncle. He is a devoted friend and family member. And he is a person who is incredibly ashamed of his actions and committed to completely changing his life, even before his arrest.

5

To say Mr. Jordan's childhood was difficult would be an understatement. As detailed in both the PSR and his letter to the Court (Exhibit 1), Mr. Jordan grew up in circumstances marked by profound neglect and instability.  He was the second of three boys born to parents who were consumed by drug addiction, leaving the children without adequate care.  The boys often wore dirty, ill-fitting clothes, and for years the family home had no electricity or running water.  Child Protective Services intervened at one point, but the children were ultimately returned to the same unsafe environment.  In addition to this neglect, Mr. Jordan suffered sexual abuse at the hands of a family friend.  His formative years were defined by deprivation, chaos, and trauma—conditions that shaped his development in lasting ways.

Despite the hardships of his childhood, Mr. Jordan worked to build a better life for himself.  Like many who grew up in such traumatic circumstances, he turned to drugs as a young man, but with his brother's support he was able to redirect his path.  Determined to rise above the chaos of his upbringing, he chose a career in law enforcement, dedicating himself to protecting others and serving his community.  His commitment was recognized in a tangible way when he was honored for saving a citizen's life in the line of duty (See Exhibit 5).  These accomplishments reflect Mr. Jordan's genuine desire to contribute positively to society and to overcome the obstacles he was handed from birth.

Mr. Jordan understands that his law enforcement career is essentially a double-edged sword.  On one hand, he is proud of the work he did and found a strong sense of accomplishment in giving back to the community.  On the other hand, his actions were committed while he was a police officer (though never while on duty), and he knows he betrayed his badge, his oath, and his promise to his community.  Such is the case with many offenders: while they have done good in their lives in different ways, it is all tainted by the harm they have also caused.

## C. The Need for the Sentence Imposed

The Court is instructed, in 18 U.S.C. § 3553(a)(2), to consider the need for the sentence imposed.  The sentence should "reflect the seriousness of the offense, [] promote respect for the law, and [] provide just punishment for the offense."  It should also "afford adequate deterrence to criminal conduct", "protect the public from further crimes of the defendant", and "provide the defendant with needed educational or vocational training…."  18 U.S.C. § 3553(a)(2).

Fifteen years in prison is a substantial and serious sentence, particularly for someone who has never been to jail before and had a career as a law enforcement officer.  Such a sentence reflects the seriousness of the offense, promotes respect for the law, provides just punishment for the defendant, and affords adequate deterrence.

There is a saying in psychology that the best predictor of the future is the

past.  That truth doesn't mean a person is doomed to repeat their mistakes, but it does remind us how hard real change can be.  Breaking old patterns takes strength, support, and persistence, and anyone who manages to do so has overcome barriers that most of us will never fully see or understand.  Mr. Jordan has already shown that he is capable of making such change – twice.  First, with his brother's help, he fought back his initial struggles with addiction, turned his life around, and built a career serving his community.  He did it again following these incidents, prior to his arrest.  He fought back against his addiction, acknowledging that the battle will be a lifelong endeavor, and changed his life, determined not to live the rest of his life as a person who would commit these kinds of acts.

Beginning in 2020, Mr. Jordan's turn-around is the true indication of who he is and what he can do with his life.  He now knows what he had, and is acutely aware of all he has lost.  He is extremely lucky that, regardless of the sentence he serves, he will have the support of friends and family when he is released from prison.[1]  Support from family is an important factor in lowering the risk of recidivism.  Once released from prison, he will be on supervised release and sex offender monitoring, further ensuring the safety of the public.

Mr. Jordan was still a young man when the criminal conduct was committed.

---

1 While Mr. Jordan's childhood was challenging, he has repaired the relationships with his parents and now enjoys weekly visits with his family.

It began in approximately 2017, when Mr. Jordan was 27 years old, and stopped in 2020, before he turned 30 years old.  It also occurred over a relatively short period of time, approximately three years.  Mr. Jordan is not someone who has spent his whole life committing crimes.

Mr. Jordan is now 34 years old and is facing a mandatory minimum 15 years in prison.  Thus, even if he were sentenced to the minimum, he would be in his mid-40s before he is released from prison.  According to the United States Sentencing Commission, age correlates in general with a decreased rate of recidivism.  "Age exerted a strong influence on recidivism across all sentence length categories.  Older offenders were less likely to recidivate after release than younger offenders who had served similar sentences, regardless of the length of the sentence imposed." *The Effects of Aging on Recidivism Among Federal Offenders.* https://www.ussc.gov/research/research-reports/effects-aging-recidivism-among-federal-offenders, published December 2017 (last visited 8/21/2025).  While the study primarily focused on offenders who were over 60 at the time of release, the "younger offenders" that they were compared to were under 30 at the time of release.

All of the factors mentioned above lead to the same conclusion: that Mr. Jordan already turned his life around, and will continue on the same path once he has completed his sentence.  Thus, the likelihood that the public needs to be

protected from Mr. Jordan's further crimes is low.

### D. The "Anchoring Effect"

Included as Exhibit 6 is an article titled "Confronting Cognitive 'Anchoring Effect' and 'Blind Spot' Biases in Federal Sentencing: A Modest Solution for Reforming a Fundamental Flaw" by Mark W. Bennett, a federal district court judge in the Northern District of Iowa.  The article highlights how strongly the sentencing guidelines influence judicial decision-making, even though they are advisory after *Booker*.  In this case, the guideline range of 360 months to life creates an extraordinarily high anchor that risks overshadowing the other statutory factors the Court must consider under 18 U.S.C. § 3553(a).  As the article explains, even experienced judges are not immune to this bias, and sentences can be disproportionately pulled toward the guideline range despite recognition that it is not mandatory.  A 15-year sentence in this case properly accounts for the seriousness of the offense, the history and characteristics of the defendant, and the need for punishment and deterrence, while avoiding the undue influence of the guideline anchor.  By consciously resisting that gravitational pull, the Court can impose a sentence that is fair, individualized, and sufficient but not greater than necessary.

### E. Restitution

Although the government is not seeking restitution, Mr. Jordan has

nevertheless set aside $10,000 from a family member that he wishes to contribute toward restitution.  This is not something required of him; rather, it reflects his genuine desire to take responsibility for the harm he caused and to begin making amends in the only way he can.  His willingness to do this voluntarily—without legal obligation—underscores the sincerity of his remorse and his commitment to change.  It is an extraordinary step for someone in his position, and it shows that he is not only accepting accountability but also actively working to repair, in some small measure, the damage done.  This voluntary restitution supports the conclusion that a sentence of 15 years is sufficient to meet the goals of punishment and deterrence while recognizing Mr. Jordan's capacity for rehabilitation.

## IV.    Mitigating Factors

As the Court is well aware, it is not bound solely to the §3553 factors. "[S]entencing is a difficult art [and it] is easy to make it mechanical." *United States v. Diaz-Argueta*, 447 F.3d 1167 (9th Cir. 2006).  Even before *Booker*, the guidelines "place[d] essentially no limit on the number of potential factors that may warrant a departure." *Koon v. United States*, 518 U.S. 81, 106 (1996).  "It has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." *Id.* at 113.  There are a "potentially infinite number

of factors which may warrant a departure." *United States v. Coleman*, 188 F.3d 354, 358 (6th Cir. 1999).  In light of this, Mr. Jordan offers the following mitigating factors.

    1.  <u>Mr. Jordan has no prior record and is a true first-time offender.</u>

Not only does Mr. Jordan fall within Criminal History Category I, he is also a "true" first-time offender, as this is the first time he has ever been charged or arrested for a crime.  Appellate courts have consistently upheld the appropriateness of downward variances in true first-offender status, and research shows that recidivism for those with zero criminal history points is lower than even those with one or two points.  *United States v. Paul*, 561 F.3d 970 (9th Cir. 2009) (where defendant convicted of embezzlement and guidelines 10-16 months, Court's within guideline sentence of 15 months unreasonably high in part because Paul was a first-time offender with no criminal record whatsoever); *United States v. Autery*, 555 F.3d 864 (9th Cir. 2009) (where defendant convicted of poss. of porn. and where guidelines 41-51 months, court's sua sponte variance to probation not unreasonable in part because it was defendant's first conviction and Crim. History Level I "did not fully account for his complete lack of criminal history" because defendant with minor criminal history still falls in cat. I); *United States v. Huckins,* 529 F.3d 1312 (10th Cir. 2008) (where D convicted of possession of child porn and guidelines 78-97 months, court's variance to 24 months proper in part because this

was defendant's first conviction, rejecting government's argument that guidelines already considered this by placing defendant in Crim. Cat. I.; "although the Guidelines discourage granting a downward departure based upon criminal history when the defendant has been placed in a criminal history category of I...this is a not a departure case, it is a variance case....and, after *Gall* and *Kimbrough*, a factor's disfavor by the Guidelines no longer excludes it from consideration under § 3553(a).... Therefore, a district court may weigh a defendant's lack of a criminal record, even when the defendant has been placed into a criminal history category of I, in its § 3553(a) analysis."); *see* USSC's own research suggesting that proper application of 3553(a) in the case of a "true" first offender now strongly supports a below-guideline variance because of 3553(a)(2)(C) and in 3553(a)(6); Report of USSC (May 2004) "*Recidivism and the 'First Offender'*" ("The analysis [of empirical data on re-offending] delineates recidivism risk for offenders with minimal prior criminal history and shows that the risk is lowest for offenders with the least experience in the criminal justice system. Offenders with zero criminal history points have lower recidivism rates than offenders with one or more criminal history points.  Even among offenders with zero criminal history points, offenders who have never been arrested have the lowest recidivism risk of all").

13

2.  <u>Mr. Jordan's childhood was extremely difficult.</u>

As described in his letter to the Court (Exhibit 1) and in the PSR, Mr.
Jordan's childhood was difficult.  Between the neglect, exposure to substance
abuse at a young age, sexual abuse by a family friend, and the breakdown of his
parent's marriage, Mr. Jordan experienced an enormous amount of trauma.  Even
given that trauma, he was still able to have some success and become a police
officer, before his rapid decline.  Courts have consistently upheld lower sentences
based on childhoods such as this.  *See Santosky v. Kramer*, 455 U.S. 745, 789
(1982) (Rehnquist, J., joined by Burger, C.J., White, and O'Connor, J., dissenting)
("It requires no citation of authority to assert that children who are abused in their
youth generally face extraordinary problems developing into responsible,
productive citizens"); *Motley v. Collins*, 3 F.3d 781, 792 (5th Cir. 1993) (death
penalty) (fact that a doctor did not opine that he murder was likely the result of
child abuse did not preclude jurors from making the required inference "after all,
the effects of child abuse are not peculiarly within the province of an expert . . . it
requires no citation of authority to assert that children who are abused in their
youth generally face extraordinary problems developing into responsible,
productive, citizens"); *United States v. Ayers*, 971 F.Supp. 1197 (N.D. Ill. 1997)
(departure granted based upon cruel childhood with relentless physical, sexual and
psychological abuse over course of years); *United States v. Hubbard*, 369

14

F.Supp.2d 146 (D. Mass 2005) (imposing 108 months instead of 188-235 career

offender range because of diminished capacity from childhood trauma including

sexual molestation of defendant and death of siblings in fire).

    3. <u>Even while committing these acts, Mr. Jordan was giving back to the community in other ways</u>

No person is all good or all bad.  While it in no way rights the wrongs he

committed, Mr. Jordan was simultaneously doing good in the community while

serving as a police officer.  The Court can take his pro-social lifestyle in other parts

of his life into consideration, along with all the other factors.  *United States v.*

*Autery,* 555 F.3d 864 (9th Cir. 2009) (where defendant convicted of poss. of porn.

and where guidelines 41-51 months, court's sua sponte variance to probation not

unreasonable in part because of district court's finding that defendant "did not fit

the profile of a pedophile"; *United States v. Santoya*, 493 F.Supp.2d 1075 (E.D.

Wisc. 2007) (in cocaine distribution case where defendant career offender and

guidelines 188-235 months court imposes 138 months in part because defendant

"has significant positives in his character and background as evidenced by the

letter from his family and fiancé which the guidelines did not take into account and

because the judge is "permitted to consider the entirely of the defendant's

background and character, not just the negatives reflected in his criminal history");

*United States v. Wachowiak*, 412 F.Supp.2d 958 (E.D. Wisc. 2006), *aff'd* 496 F.3d

744 (7th Cir. 2007) (where 24 year old music student convicted of possessing child

pornography, guidelines 121-151 months, and where he is in treatment, low risk of recidivism, and strong support from family, court imposes 70 months in part because "the guidelines failed to consider defendant's otherwise outstanding character, as depicted in the many supportive letters... while § 3553(a)(1) requires the court to consider the character of the defendant, the guidelines account only for criminal history. In cases where the defendant led an otherwise praiseworthy life, the court should consider a sentence below the advisory range. *See, e.g., United States v. Page*, No. 04-CR-106, 2005 U.S. Dist. LEXIS 19152 at 12 (E.D. Wis. Aug. 25, 2005); *United States v. Ranum*, 353 F. Supp. 2d 984, 986 (E.D. Wis. 2005))."; *United States v. Carter*, 530 F.3d 565 (7th Cir. 2008) ("The guidelines are one factor among those listed in 18 U.S.C. § 3553(a), and regardless of whether courts have previously recognized public service as a ground for departure from the Guidelines, sentencing courts are charged with considering as part of the § 3553(a) factors "the history and characteristics of the defendant," which would include a defendant's public service. § 3553(a)(1)).

4. At the time of these offenses, Mr. Jordan was using drugs and alcohol heavily, but has since addressed his addiction and stopped using

As detailed in his letter to the Court, prior to committing this offense, the stress of Mr. Jordan's life caught up to him and he began using drugs and alcohol to cope. The incidents related to this case occurred when Mr. Jordan was using either drugs, alcohol, or a combination of the two. Before he was arrested,

however, he was able to get sober and stayed clean for several years prior to being charged. *United States v. Garcia*, 497 F.3d 964 (9th Cir. 2007) (where D convicted of drug conspiracy and sentenced to over 100 years, sentence vacated in part because district judge erred in holding it had no power to consider defendant's drug addiction and resulting mental impairment as a mitigating factor under 18 U.S.C. § 3553(a). Fact that guidelines (used to) preclude downward departure because of voluntary use of drugs under USSG § 5K2.13 and 5H1.4 does not preclude judge from using same as mitigating factor under § 3553(a)).

5. Mr. Jordan engaged in post-offense rehabilitation and voluntary cessation of criminal conduct before being charged and arrested.

It is not uncommon for a defendant to be arrested repeatedly before he is able to finally turn his life around and stop engaging in criminal conduct. Mr. Jordan, on the other hand, abandoned that life years before he was arrested, and the Court can use this factor to reduce his sentence. After the seizure of his computer, and before his arrest, he got sober, moved to Texas, was gainfully employed, met, began dating, and became engaged to a woman, and moved to New Mexico to be with her. In his three years at FDC Honolulu, his positive behavior has continued. He has only one disciplinary infraction (a violation of phone policy from 2022), works in the Education Department, and helps tutor other prisoners trying to get their GED or work on their cases. In short, he has been a model prisoner and has earned the respect of both the FDC staff and other inmates (*See* Exhibit 3). Mr.

17

Jordan has also tried to make the best use of his time while in custody. In addition to working on his case, he has completed many correspondence classes that were available to him. Exhibit 4. He also recently completed the N-RDAP program now offered at FDC Honolulu. Finally, Mr. Jordan has embraced his faith and attends nightly Bible Study while incarcerated. *See United States v. McFarlin*, 535 F.3d 808 (8th Cir. 2008) (where D convicted of § 371 conspiracy to distribute drugs and max. sentence five years, though guidelines call for 10 years, district court's sentence of probation and home detention for three years not unreasonable in part because of post-offense rehabilitation (defendant became a preacher) ... A defendant's post-arrest rehabilitation "is relevant in evaluating the § 3553(a) factors."); *United States v. Workman,* 80 F.3d 688 (2nd Cir. 1996) (between defendant's criminal conduct and arrest he left a gang, joined the army, and was honorably discharged - a modest downward departure proper because defendant abandoned his criminal lifestyle); *United States v. Cherry*, 487 F.3d 366 (6th Cir. 2007) (where defendant convicted of possessing child pornography and guideline range was 210-262 months, sentence of 120 months (43% variance from guidelines) was proper in part because defendant's "efforts at rehabilitation were more extensive than those the district court usually [saw] in offenders"); *United States v. Thavaraja*, 740 F.3d 253 (2d Cir.2014) (where defendant convicted of conspiring to provide support to terrorist organization and guidelines 240 months,

18

court's sentence of 108 months not unreasonable in part because "for the six years

he was incarcerated  he was a model prisoner who tutored other prisoners." );

*United States v. Maurer*, 76 F.Supp.2d 353, 362 (S.D.N.Y.,1999) (low end

sentence warranted in part because defendant "has proved to be a model prisoner

for the time in which he has been incarcerated" before sentencing); *United States v.*

*Johnson*, 588 F.Supp.2d 997 (S.D. Iowa  2008) (in child porn. case where

guidelines 121-151, court imposes sentence of 84 months in part because "The

Court views Defendant's behavior during the three-year period between the seizure

of his computer and his indictment as a good indication of what society can expect

from him after he completes his sentence [and is a factor court considers in

imposing sentence]").

     6.  <u>Mr. Jordan will be considered a vulnerable defendant in BOP</u>

     Mr. Jordan's exemplary record while in custody is even more surprising

considering he has several risk factors that make him an extremely vulnerable

defendant.  Not only has he pled guilty to a sex offense, but he is also a former

police officer.  Both of these factors create risks to him that other inmates simply

do not have to face, and will have a role in where he is designated and what

programs he will be allowed to take part in.  Because he has found his place at

FDC Honolulu, he will be requesting to stay and serve his sentence there, rather

than being transferred to the mainland.  *See United States v. Kelly*, 868 F.Supp.2d

1202, 1204 (D.N.M.,2012) (in child porn. case, judge granted downward departure because psychiatrist testified "prison would have destructive and devastating effects" on the defendant "and would not be rehabilitating." "Indeed, because of the distorted and bizarre hierarchy of prison culture, Kelly may be subject to serious danger in prison." The judge observed that "The last defendant this Court was required to sentence to the mandatory five-year prison term for receipt of child pornography, a 72–year old retired attorney, was beaten to death within days of arriving at the federal penitentiary).

7. <u>Mr. Jordan's strong family and community support continues to aid his rehabilitation and lowers his risk of recidivism.</u>

Many defendants can only hope for the type of family and community support that Mr. Jordan enjoys. The letters of support, attached as Exhibit 2, show that Mr. Jordan will have a strong support system once he is released from custody. Studies show that this type of support is invaluable when he attempts to reintegrate in society. *See* Shirley R. Klein *et al., Inmate Family Functioning,* 46 lnt'l J. Offender Therapy & Comp. Criminology 95, 99-100 (2002) ("The relationship between family ties and lower recidivism has been consistent across study populations, different periods, and different methodological procedures."); Phyllis J. Newton, Jill Glazer, & Kevin Blackwell, *Gender, Individuality and the Federal Sentencing Guidelines,* 8 Fed. Sent'g Rep. 148 (1995) ("[T]he better family ties are maintained[,] the lower the recidivism rate,"); *United States v. Sayad*, 589 F.3d

1110 (10th Cir. 2009) (where defendant convicted of interstate delivery of 11 kilograms of cocaine and guidelines were 57 months, sentence of probation is reasonable in part because, unlike in most cases, there is strong family support which will aid rehabilitation); *United States v. Wachowiak*, 412 F.Supp.2d 958 (E.D. Wisc. 2006) *aff'd* 496 F.3d 744 (7th Cir. 2007) (in possession of porn case, where guidelines 120-151 months, below guideline sentence of 70 months imposed in part because "the guidelines failed to account for the strong family support defendant enjoyed, which would aid in his rehabilitation and re-integration into the community.  Because defendant's family and friends have not shunned him despite learning of his crime, he will likely not feel compelled to remain secretive if tempted to re-offend. Rather, he will seek help and support"); *United States v. Smith,* (4th Cir. April 22, 2008) 2008 WL 1816564 (unpub.) (in child porn case where guidelines 78-97 months, sentence of 24 months not abuse of discretion where district court noted, among other things, that defendant had "strong family ties.").

## V. CONCLUSION

A sentence of 15 years is a profoundly serious punishment. It recognizes the gravity of the offense and the harm it caused, while also acknowledging that Mr. Jordan is more than the worst thing he has ever done. His life story is one of trauma, survival, and resilience. Despite the pain and neglect of his childhood, he

once managed to turn his life around, serve others, and make a meaningful

contribution to his community. His acceptance of responsibility and his sincere

remorse show that he has the capacity to change again. A 15-year sentence will

punish him severely, protect the public, and send a clear message of accountability.

But it will also leave open the possibility that, after paying this heavy price, he can

someday return to society as a better, rehabilitated man. For these reasons, we

respectfully ask the Court to impose a sentence of 15 years.


      Dated: August 22, 2025 in Honolulu, Hawai`i.


                */s/ Caroline M. Elliot*
                CAROLINE M. ELLIOT
                Counsel for Defendant
                MASON JORDAN

## **CERTIFICATE OF SERVICE**

I hereby certify that the foregoing was filed with the Clerk's office and it has been served on counsel of record through the court's electronic filing system.

DATED: August 22, 2025 in Honolulu, Hawai`i.

*/s/ Caroline M. Elliot*
CAROLINE M. ELLIOT